UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNY DELORES SEWELL,                        Case No. 10-12520
O/B/O HMC, a minor,

                                             David M. Lawson
            Plaintiff,                       United States District Judge

vs.

                                             Michael Hluchaniuk
COMMISSIONER OF                              United States Magistrate Judge
SOCIAL SECURITY,

            Defendant.

_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 12)**

**I.    PROCEDURAL HISTORY**

       A.    Proceedings in this Court

On June 24, 2010, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision denying benefits.  (Dkt. 1).  Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge David M.

Lawson referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of supplemental

security income benefits.  (Dkt. 3).  This matter is currently before the Court on

cross-motions for summary judgment.  (Dkt. 11, 12).

B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on February 24, 2006, alleging disability as of January 1, 2006. (Dkt. 5, Tr. at 30). The claim was initially disapproved by the Commissioner on August 8, 2006. (Dkt. 5, Tr. at 50). Plaintiff requested a hearing and on May 7, 2009, plaintiff appeared with counsel before Administrative Law Judge (ALJ) John J. Rabaut, who considered the case *de novo*. In a decision dated August 28, 2009, the ALJ found that plaintiff was not disabled. (Dkt. 5, Tr. at 11- 27). Plaintiff requested a review of this decision on September 14, 2009. (Dkt. 5, Tr. at 7-10). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-11E, Dkt. 5, Tr. at 4), the Appeals Council, on April 30, 2010, denied plaintiff's request for review. (Dkt. 5, Tr. at 1-4); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **GRANTED**, defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

The claimant was sixteen years of age at the time of the most recent administrative hearing and was an adolescent on the date the application was filed (February 24, 2006).  (Dkt. 5, Tr. at 32).  In denying her claims, defendant Commissioner considered bi-polar disorder with ADHD tendencies as possible bases of disability.  (Dkt. 5, Tr. 99).  The ALJ applied the three-step disability analysis for children to the claimant's claim.  (Dkt. 5, Tr. at 17).  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity at any time. *Id*.  At step two, the ALJ found that plaintiff's asthma, bipolar disorder, attention deficit hyperactive disorder, obsessive compulsive disorder, anxiety and learning disorder were "severe."  At step three, the ALJ found that the claimant's severe impairments or combination of impairments did not meet or medically or functionally equal one of the listings in the regulations.  *Id.*  The ALJ denied disability benefits because he concluded that the claimant had not been disabled, as defined in the Social Security Act, since February 24, 2006, the date the application was filed.  (Dkt. 5, Tr. at 27).

Report and Recommendation
Cross-Motions for Summary Judgment
*Sewell v. Comm'r*; Case No. 10-12520

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case

Report and Recommendation
Cross-Motions for Summary Judgment
*Sewell v. Comm'r*; Case No. 10-12520

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

      B.    <u>Legal Standards - Eligibility For SSI Childhood Disability Benefits</u>

A child will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three step sequential evaluation process:

1. A child will be found "not disabled" if he engages in substantial gainful activity.

2. A child will be found "not disabled" if he does not have a severe impairment or combination of impairments.

3. A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416. 924(a)-(d).

To determine whether a child's impairment functionally equals the listings, the

SSA will assess the functional limitations caused by the child's impairment. 20

C.F.R. § 416.926a(a). The SSA will consider how a child functions in six

domains:

1.     Acquiring and using information;

2.     Attending and completing tasks;

3.     Interacting and relating with others;

4.     Moving about and manipulating objects;

5.     Caring for yourself; and

6.     Heath and physical-being.

20 C.F.R. § 416.926a(b)(1). If a child's impairments result in "marked"

limitations in two domains, or an "extreme" limitation in one domain,[2] the

impairment functionally equals the listing and the child will be found disabled. 20

C.F.R. § 416.926a(d).

C.     <u>Analysis and Conclusions</u>

Plaintiff does not appear to object to the ALJ's conclusion that the

claimant's impairments did not meet the Listings. Rather, the appeal seems to be

---

[2] A marked limitation is one that "interferes seriously with [a child's] ability
to independently initiate, sustain, or complete activities." 20 C.F.R.
§ 416.926a(e)(2). An extreme limitation is one that "interferes very seriously with
[a child's] ability to independently initiate, sustain, or complete activities." 20
C.F.R. § 416.926a(e)(3).

limited to the ALJ's assessment of whether the claimant's impairments functionally equaled an impairment in the Listings, based on an assessment of the six domains found in 20 C.F.R. § 416.926a(a).  Specifically, plaintiff claims that the ALJ erred in concluding that the claimant was not markedly limited in the domain of "acquiring and using information."  The ALJ concluded that the claimant had a marked limitation in the domain of attending and completing tasks and thus, if the ALJ found a second domain to be "markedly limited," the claimant would be deemed to functionally equal the Listings.

This domain considers how well a child is able to acquire or learn information, and how well a child uses the information she has learned.  20 C.F.R. § 416.926a(g).  The regulations provide that a school-age child (i.e., a child age 6 to the attainment of age 12) without an impairment should be able to learn to read, write, and do math, and discuss history and science.  The child will need to use these skills in academic situations to demonstrate what she has learned by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. The child will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change).  The child should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with

individuals or groups, by asking questions and expressing her own ideas, and by understanding and responding to the opinions of others. 20 C.F.R. § 416.926a(g)(2)(iv). Social Security regulation 20 C.F.R. § 416.926a(g)(3) sets forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty children could have in acquiring and using information are: (i) does not understand words about space, size, or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) has difficulty solving mathematics questions or computing arithmetic answers; or (v) talks only in short, simple sentences, and has difficulty explaining what she means. As to this domain, the ALJ concluded:

> The claimant has had special education for mathematics and written language due to learning disabilities that causes her difficulty in acquiring and using information. Her intellectual abilities are in the average range but she has been limited but less than marked in this domain due to the fact that the claimant's medications have allowed her to focus and pay attention in the classroom.

(Dkt. 5-2, Pg ID 43).

Plaintiff argues the substantial evidence does not support the ALJ's

conclusion and that ALJ's analysis is not internally consistent.  For example, when concluding that the claimant has a marked limitation in the domain of attending to and completing tasks, the ALJ discussed that the claimant "has shown the inability to return homework and complete projects. This inability to complete [the] work is due to [the] impairments of oppositional defiant disorder, anxiety and bipolar disorder.  [The claimant] is failing in [ ] academics due to a combination of these impairments."  The ALJ goes on to express that the claimant "in the academic setting is hindered by [the] learning disabilities, particularly in written expression and in [the] overall ability to express [oneself] as was noted in [the] testing." (Tr. 26).

While plaintiff acknowledges that it is not an automatic conclusion that a problem in attending to and completing tasks translates into a problem acquiring and using information, she argues that in this case, it is clear that the marked limitation in the claimant's ability to attend to and complete tasks has resulted in a marked limitation in her ability to acquire and use information based on her continual failing grades through the present.  Plaintiff points out that the ALJ recognizes that the claimant "showed during [the] 9th grade year (2006-2007) as school [the claimant] had struggled with [the] academics and during [the] 10th grade year (2007-2008) [she] was failing except for one A, B, C and D- in classes. In [the] 11th grade (2008-2009) marking [she] was failing." (Tr. 23).  The ALJ

also acknowledged that the claimant "was referred for a psycho-educational evaluation on November 26, 2008, due to failing grades . . . [she] had learning disabilities in mathematics and written language. It was also reported that [the claimant's] anxiety was also interfering with her academic environment and eligibility for special education should be considered under the health impaired rule." (Tr. 24). Further, the claimant's "school record in January through March 2009, showed that [she] was receiving failing grades for not producing homework or doing projects." The claimant's "writing skills were measured at the 4th grade level . . . It was stated that [HMC.s] overall capacity to apply [the] skills was at a low average range or seventh grade level. [She] was considered learning disabled in the areas of mathematical calculation and written expression." (Tr. 24). Furthermore, although the claimant was in the 11th grade level at the time of the hearing, the record of evidence "stated that [the claimant's] overall capacity to apply [] skills was at a low average range or seventh grade level." (Tr. 24). Based on this evidence, plaintiff argues that the ALJ erred as a matter of fact and the August 28, 2009 decision should be reversed and the case remanded for further proceedings, specifically to fully and properly evaluate the evidence of record when deciding whether or not the claimant has a marked limitation in the domain of acquiring and using information.

In response, the Commissioner asserts that the ALJ's decision is supported

by substantial evidence.  Specifically, the Commissioner points to the ALJ's observation from the record that claimant's "intellectual abilities were in the average range.  (Tr. 26).  In particular, the ALJ noted that intelligence testing "was well within the average range of intellect based on her non-regressed Full Scale scoring."  (Tr. 24).  On November 26, 2008, Mr. Huiskens conducted psycho-educational testing of claimant and reported that claimant "was conversational.  Expressive language skills were strong with [Claimant] participating in articulate conversation."  (Tr. 222).  On intelligence testing, Mr. Huiskens opined that claimant was of average intelligence and average cognitive skills.  (Tr. 222-23).  The Commissioner also relies on the fact that claimant matriculated from seventh grade to eighth grade (Tr. 146) and from eighth grade to high school (Tr. 157) and suggests that this "necessarily demonstrates an ability to acquire and use information and fail[s] to support 'marked' limitations in this domain."

The Commissioner also points out that Ms. Scriven, claimant's eighth grade teacher, reported on April 13, 2006, that claimant only had "a slight problem" with activities under the domain of "Acquiring and Using Information."  (Tr. 119).  She reported that claimant on "no problem" "understanding school and content vocabulary" and "a slight problem" with: Comprehending oral instructions; Reading and comprehending written material; Comprehending and doing math

problems; Understanding and participating in class discussions; Providing

organized oral explanations and adequate descriptions; Expressing ideas in written

form; Learning new material; Recalling and applying previously learned

material; and Applying problem-solving skills in class discussions.  (Tr. 119).

According to the Commissioner, her assessment provides substantial support for

the ALJ's finding in this domain.

Further, although the ALJ found that claimant was "limited" in this domain,

the Commissioner argues that he reasonably determined the degree of limitation

was "less than marked" "due to the fact that the claimant's medications have

allowed her to focus and pay attention in the classroom."  (Tr. 26).  And,

claimant's father told Matthew Dickson, Ph.D., a licensed psychologist, that "since

being on medication [Claimant's] mood swings are less severe and she is able to

concentrate and focus better."  (Tr. 157).  Claimant's father described her grades

as "A's, C's, and E's" and that "prior to taking medication she was getting all

E's."  (Tr. 158).  The Commissioner also points out that Dr. Dickson asked

claimant to solve a series of calculations and made only one error in performing

serial seven calculations backward.  (Tr. 159).  Based on his evaluation and

interview of claimant, Dr. Dickson assigned Claimant a GAF score of

68, reflecting only mild symptoms but generally functioning pretty well.

According to the Commissioner, Dr. Dickson's evaluation provides substantial

support for the ALJ's finding in this domain.

Additionally, Drs. Mood and Liu, State Agency reviewing physicians, reviewed the evidence of record and opined that claimant did not have an impairment or combinations of impairments that met, medically equaled, or functionally equaled a Listing.  (Tr. 163-64). The doctors noted that Claimant's eighth grade teacher reported that Claimant only had a slight problem in the domain of "Acquiring and Using Information."  (Tr. 105).  Thus, according to the Commissioner, their opinions provide substantial support for the ALJ's finding in this domain.

There are several problems with the analysis provided by the Commissioner as to the ALJ's analysis of the domain of "acquiring and using information."  First, much of the Commissioner's argument is merely a post-hoc attempt to justify the failure of the ALJ to properly analyze this domain.  *Shoup v. Comm'r*, 2011 WL 1298533, *2 (N.D. Ohio 2011), citing, *Wooten v. Astrue*, 2010 WL 184147 (N.D. Ohio 2010) (The Commissioner's post hoc arguments on judicial review are immaterial.).  The Commissioner's arguments simply cannot justify the ALJ's decision when the ALJ failed to conduct a proper analysis.

More importantly, it does not appear that the ALJ utilized SSR 09-3p[3] in

---

[3] SSR 09-3p was effective on March 19, 2009, two months before the hearing in this matter and five months before the ALJ issued his decision.

Report and Recommendation
Cross-Motions for Summary Judgment
*Sewell v. Comm'r*; Case No. 10-12520

evaluating this domain.  SSR 09-3p sets forth agency policy on the evaluation of

the domain of "acquiring and using information."  It explains how school records,

academic performance, and special education assistance, and counseling should be

evaluated:

> Because much of a preschool or school-age child's
> learning takes place in a school setting, preschool and
> school records are often a significant source of
> information about limitations in the domain of
> "Acquiring and using information."  Poor grades or
> inconsistent academic performance are among the more
> obvious indicators of a limitation in this domain
> provided they result from a medically determinable
> mental or physical impairment(s).  Other indications in
> school records that a mental or physical impairment(s)
> may be interfering with a child's ability to acquire and
> use information include, but are not limited to:
> • Special education services, such as assignment of a
> personal aide who helps the child with classroom
> activities in a regular classroom, remedial or
> compensatory teaching methods for academic subjects,
> or placement in a self-contained classroom.
> • Related services to help the child benefit from special
> education, such as occupational, physical, or
> speech/language therapy, or psychological and
> counseling services.
> • Other accommodations made for the child's
> impairment(s), both inside and outside the classroom,
> such as front-row seating in the classroom, more time to
> take tests, having tests read to the student, or after-school
> tutoring.
> The kind, level, and frequency of special education,
> related services, or other accommodations a child
> receives can provide helpful information about the
> severity of the child's impairment(s). However, the lack
> of such indicators does not necessarily mean that a child

has no limitations in this domain. For various reasons, some children's limitations may go unnoticed until well along in their schooling, or the children may not receive the services that they need.  Therefore, when we assess a child's abilities in any of the domains, we must compare the child's functioning to the functioning of same-age children without impairments based on all relevant evidence in the case record.

Although we consider formal school evidence (such as grades and aptitude and achievement test scores) in determining the severity of a child's limitations in this domain, we do not rely solely on such measures. We also consider evidence about the child's ability to learn and think from medical and other non-medical sources (including the child, if the child is old enough to provide such information), and we assess limitations in this ability in all settings, not just in school.

* * *

Children who have limitations in the domain of "Acquiring and using information" may also have limitations in other domains. For example, mental impairments that affect a child's ability to learn may also affect a child's ability to attend or to complete tasks. In such cases, we evaluate limitations in both the domains of "Acquiring and using information" and "Attending and completing tasks."

SSR 09-3p also provides examples of indicators of normal functioning of adolescents (age 12 to attainment of age 18):

> • Continues to demonstrate learning in academic assignments (for example, in composition, during classroom discussion, and by school laboratory experiments).
> • Applies learning in daily situations without assistance (for example, going to the store, getting a book from the library, or using public transportation).
> • Comprehends and expresses simple and complex ideas

using increasingly complex language in academic and
daily living situations.
• Learns to apply knowledge in practical ways that will
help in employment (for example, carrying out
instructions, completing a job application, or being
interviewed by a potential employer).
• Plans ahead for future activities.
• Begins realistic occupational planning.

The SSR also includes examples of limitations to further assist adjudicators in

evaluating a child's impairment-related limitations in the domain of "Acquiring

and using information."  These examples are drawn from regulations and training.

The SSR cautions that they are not the only limitations in this domain, nor do they

necessarily describe a "marked" or an "extreme" limitation.

• Does not demonstrate an understanding of words that
describe concepts such as space, size, or time (for
example, inside/outside, big/little, morning/night).
• Cannot rhyme words or the sounds in words.
• Has difficulty remembering what was learned in school
the day before.
• Does not use language appropriate for age.
• Is not developing "readiness skills" the same as peers
(for example, learning to count, reciting ABCs,
scribbling).
• Is not reading, writing, or doing arithmetic at
appropriate grade level.
• Has difficulty comprehending written or oral
directions.
• Struggles with following simple instructions.
• Talks only in short, simple sentences.
• Has difficulty explaining things.

The undersigned finds the ALJ's two sentence analysis of this domain to be

woefully inadequate.[4]  "As SSR 09-3p suggests, an ALJ must consider more than just IQ scores when considering a child's level of impairment.  He must also find that the child's daily functioning level is consistent with those scores." *Williams v. Astrue*, 2011 WL 1935830 (N.D. Ill 2011), citing, 20 C.F.R. § 416.926a(e)(4)(ii).  As noted in the SSR, evidence about a child's daily functioning can trump test results, and the child can be found to have a marked or extreme limitation even if her IQ is above or below the standard deviations provided for in the regulations.  *Id.*, citing, § 416.926a(e)(4)(ii)(A)-(B).  Here, the ALJ refers to the claimant's "average intellectual abilities," but fails to evaluate whether her functioning in this domain was in accord with her intellect.  Although the claimant's IQ scores may not be low enough to meet the clinical definition of mental retardation, "this does not mean that Claimant has a less than marked impairment with respect to acquiring and using information." *Dabul-Montini v. Astrue*, 2010 WL 3584348, *6 (N.D. N.Y. 2010).  "A child with low intelligence can have an impairment of cognitive function.  A child of normal intelligence can also be cognitively impaired if some condition other than a low IQ severely affects

---

[4]  "The claimant has had special education for mathematics and written language due to learning disabilities that causes her difficulty in acquiring and using information.  Her intellectual abilities are in the average range but she has been limited but less than marked in this domain due to the fact that the claimant's medications have allowed her to focus and pay attention in the classroom." (Dkt. 5-2, Pg ID 43).

the child's ability to progress in the skills involved in reading, writing, and arithmetic." *Id*., quoting, *Carballo ex rel. Cortes v. Apfel*, 34 F.Supp.2d 208, 218 (S.D. N.Y. 1999). The "ALJ also failed to link his specific domain decision to any part of the record or to provide an evidentiary basis for the very different criteria" that apply to this domain. *Williams*, at *11; *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("[W]e cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). Thus, while the ALJ's decision contains an extensive recitation of the evidence in the record, he did not connect the dots as it relates to the evidence he relied on to support his conclusions in the domain of acquiring and using information.

Moreover, the ALJ's reliance on claimant's "improvement" does not constitute substantial evidence. *See Williams*, at *11. "The regulations governing an initial determination of childhood disability do not ask an ALJ to consider improvement but rather to 'compare your functioning to the typical functioning of children your age who do not have impairments.'" *Williams*, at *11, quoting, 20 C.F.R. § 416.926a(f)(1); *see also* SSR 09-2p ("The critical element in evaluating the severity of a child's limitations is how appropriately, effectively, and independently the child performs age-appropriate activities."). As the *Williams*

court pointed out, presumably, a child with serious limitations could show a measure of progress and still fall within the marked or extreme functional categories compared to other children her own age. *Id*. The ALJ is required – and failed in this case – to compare the claimant to nonimpaired children her own age. The social security ruling that addresses this domain stresses that an ALJ should "focus first on the child's activities, and evaluate how appropriately, effectively, and independently the child functions compared to children of the same age who do not have impairments." SSR 09-3p. Indeed, "[s]atisfactory grades awarded to special education students receiving support and modifications cannot automatically be equated to the grades of nonimpaired children without more discussion than the ALJ provided here." *Williams*, at *12, citing, 20 C.F.R. § 416.924a(b)(7)(iv) ("[W]e will consider that good performance in a special education setting does not mean that you are functioning at the same level as other children your age who do not have impairments."). Thus, the ALJ's extensive reliance on the claimant's "improvement" does not address claimant's functionality in this domain and does not provide substantial evidence to support the ALJ's decision in this regard.

D.    Conclusion

Accordingly, the undersigned finds that substantial evidence does not support the ALJ's conclusion that claimant was "less than markedly impaired" in

the domain of "acquiring and using information." Thus, the undersigned recommends that the ALJ's decision be reversed and remanded for further proceedings consistent with this report.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: July 20, 2011

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 20, 2011, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Mikel E. Lupisella, Susan K. DeClercq, AUSA, and
the Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov